```
                    UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF MICHIGAN
                        SOUTHERN DIVISION


UNITED STATES OF AMERICA


                        Government.

       v.                              Case No. 10-20676


STEVEN DEMINK,


                        Defendant.

_____/

                    SENTENCE     HEARING

    BEFORE THE HONORABLE GERALD E.ROSEN, Chief Judge
                United States District Judge
            733 US Courthouse & Federal Building
                231 Lafayette Boulevard West
                   Detroit, Michigan 48226
                   Wednesday, August 3, 2011


APPEARANCES:

        KEVIN MULCAHY
        HALA Y. JARBOU
        Assistant United States Attorneys
        211 W. Fort Street
        Detroit, MI 48226
        On behalf of the Government.

        TIMOTHY A. DINAN
        14950 E. Jefferson Avenue
        Grosse Pointe Park, MI 48230
        On behalf of the Defendant.
```

To Obtain a Certified Transcript:
Carol S. Sapala, RMR, FCRR
313.961.7552
www.transcriptorders.com

                    Usa v Demink 10-20676

C O N T E N T S

_____

IDENTIFICATION                                        PAGE


WITNESSES

None.

Sentence Hearing                                      5


Certificate of Court Reporter                         59

E X H I B I T S

_____

IDENTIFICATION                        MARKED      RECEIVED



                      None  Marked

Usa v Demink 10-20676

Sentence Hearing 8-3-2011

1          Detroit, Michigan

2          Wednesday, August 3, 2011

3          1:21 p.m.

4      THE CLERK:  The court will call criminal action

5  10-20676, United States of America versus Steven

6  Demink.

7      THE COURT:  Good afternoon.  Appearances, please.

8      MR. MULCAHY:  Yes, Your Honor.  Good afternoon.

9  Kevin Mulcahy and Hala Jarbou on behalf of the United

10  States.

11      MR. DINAN:  Good afternoon, Your Honor.  Timothy

12  Dinan on behalf of Mr. Demink who's present to my left.

13      THE COURT:  Mr. Dinan, if you and Mr. Demink would

14  approach the podium, please.

15      All right.  Mr. Dinan, I would like you to confirm

16  that you have had an opportunity to review the Presentence

17  Report with Mr. Demink.

18      MR. DINAN:  I have Your Honor.  We've also

19  reviewed the government's brief and we presented the

20  Court with our own memorandum.

21      THE COURT:  I've received that, including all 33

22  of the attachments.  I appreciate it.

23      Do you have any objections that you wish to place on

24  the record or comments concerning the Presentence Report?

25      MR. DINAN:  Judge, I've provided the government

Sentence Hearing 8-3-2011

1   today with one more letter that wasn't included.  It's

2   from my, my client's sister.  I would like to present

3   it to the Court.  I think it's relevant and should be

4   part of the record.

5          THE COURT:  I'll accept it.

6          MR. DINAN:  May I approach, Your Honor?

7          THE COURT:  You may.  Anything else concerning the

8   Presentence Report?

9          MR. DINAN:  Not the report, Your Honor, no.

10         THE COURT:  Mr. Mulcahy, for the government?

11         MR. MULCAHY:  Yes, Your Honor.

12         The government's received and reviewed the

13  Presentence Report.  We have no objections.

14         THE COURT:  All right.  Allocution on behalf of

15  your client, Mr. Dinan.

16         MR. DINAN:  Thank you, Judge.

17         Your Honor, as I present Mr. Demink today for

18  sentencing, I just want to highlight what I've put in my

19  brief what I think are the most important parts of it,

20  judge.

21         Steve has no criminal record, no history of violence.

22  He grew up and lived at home with his family most of his

23  life, judge.

24         He's been gainfully employed, got along with people.

25  He was a friend, an uncle, nephew, good neighbor.  So I'm

Sentence Hearing 8-3-2011

1   trying to figure out, judge, what, what led Steve to do

2   what he did.

3       THE COURT:  I think everybody's trying to figure

4   that out.

5       MR. DINAN:  Well, judge, what I've reviewed from

6   Dr. Miller's comments and the time I spent with Dr.

7   Miller and Steve, it seems that there's a number of

8   elements that come into play; loneliness, low self

9   esteem, poor self image, rejection throughout his

10  personal life, judge.  I'm not just saying that as an

11  excuse, but I'm trying to give you just a little

12  insight of who he is.

13      Judge, he was using The Internet as a substitute for

14  interpersonal contact.  First, it started out everyone

15  uses it for for information, for amusement, for

16  entertainment.  But then Steve was drawn more into

17  personal isolation and the sexual intrigue of his own

18  desires.

19      This isolation, this self delusion, I believe that's

20  what led to this cynical set of transactions that brought

21  him here today having plead guilty to what he was charged

22  with.

23      Judge, his mental illness, his actions, coupled with

24  the unmet needs and expectations of his victims is what

25  really led to all of these tragedies.

Usa v Demink 10-20676

Sentence Hearing 8-3-2011

1      As much at The Internet empowers people, Your Honor,

2  it also uncovers our shortcomings our weaknesses.

3      Now the government claims in its brief that Steven

4  Demink didn't care about his victims because he did not

5  confess immediately when arrested.

6      Judge, he entered a guilty plea on all the counts

7  that he's going to be sentenced on today because he knows

8  he did something wrong.

9      Not only entered guilty pleas, but entered guilty

10  pleas that could potentially put him in prison for the

11  rest his life.

12      And in his work with Dr. Miller, he started to

13  realize and understand his own weaknesses.  But more

14  importantly, the fact that his actions were the, were the

15  cause for all the pain and all the bad things that have

16  happened to the victims.

17      Dr. Miller notes Steve knows he needs psychological

18  treatment and he's amenable to it.

19      And Dr. Miller doesn't predispose himself to

20  predicting the future, but with the testing we had

21  available, the length of time he spent with him, he saw

22  Steve as someone who could be rehabilitated in the future.

23      Your Honor, I think that's a very important part of

24  the decision the Court's going to have to make today.

25      He enjoys extraordinary support from friends and

Sentence Hearing 8-3-2011

1   family, judge.

2        THE COURT:  I gather that from the letters that I

3   read.

4        MR. DINAN:  Your Honor, those letters are heart

5   felt.  It would be very easy to turn a back on Steve,

6   just leave him.  He's not the kind of person people do

7   that to.

8        I think, I think the letter I just gave you probably

9   captures it best.  Just little incidents from his life,

10  kindnesses, just the way he conducted himself day-to-day.

11  It's a total paradox to what he plead guilty to.

12       Now the way the guidelines are calculated, judge, he

13  goes to prison for life.  And if the justice system is

14  there simply to demonize individuals and act as a

15  justification for warehousing them, then it's a matter of

16  calculation, judge.  But there's more than that going on

17  today.

18       And not for one moment I don't blame the victims for

19  what happened to them nor does Steve.

20       Judge, there's good reasons to depart from the

21  guidelines.  First of all, he did not leave his household

22  to commit these acts.  He did not leave his place of

23  residence to do this.

24       He didn't want to make personal contact with the

25  victims.  I'm not saying that's any less a crime, but it's

Usa v Demink 10-20676

Sentence Hearing 8-3-2011

1   an important difference.

2       Because cases about these guidelines show us that

3   it's the people who go out and actively seek physical

4   contact, that's what they're being penalized for, judge.

5   We don't have that here.  We have a very unique situation.

6   There were no weapons involved.

7       He's accepted responsibility for what he's done.

8       THE COURT:  If I could just stop you and ask you

9   to address this issue.

10      There were no weapons involved, but wasn't the

11  computer, The Internet, used as a weapon?

12      MR. DINAN:  Yes, judge.  I understand what the

13  Court's asking.

14      But I would say its -- it's like any, any other

15  object that could be abused or used.  And I understand

16  what the Court's asking.

17      THE COURT:  In this sense a car isn't a weapon in

18  its ordinary every day use.  But if somebody uses a car

19  with the intent of causing great bodily injury or

20  killing someone, then it is a weapon.

21      Isn't that how Mr. Demink used The Internet?

22      MR. DINAN:  Judge, I would -- I could see where

23  that argument's being made.  I understand what's the

24  Court's asking.

25      It is certainly -- I'll answer your question by

Sentence Hearing 8-3-2011

1   conceding it's something that could have been abused and

2   was in this case.

3          THE COURT:  Interesting that as technology

4   progresses in whatever the arena, it seems that there

5   are benefits but, also, opportunities for great

6   disproportions and uses of ill intent.  That's

7   certainly true of the Internet.

8          MR. DINAN:  I agree, Your Honor.  Judge --

9          THE COURT:  I didn't mean interrupt you.

10         MR. DINAN:  I'm sorry, Judge.

11         I've known Steve since 1985 and in way I feel like

12  he's my brother.  And I'm here today with Steve and his

13  family and friends who are all here with him, judge.

14         Because he's my brother, I'm angry at him.  I'm angry

15  for what he did, I can't believe that he had the capacity

16  to do what he did.

17         We are all confused and disappointed about what

18  Steve's done because it's so counter-intuitive to the

19  Steven Demink we know.

20         We know that he's going to be held accountable for

21  his actions today, judge.  And no matter what happens,

22  he's got a debt to pay.

23         I don't know that he could ever fully redeem himself,

24  make people whole for the damage he's done no matter what

25  he does for the rest of his life.

Sentence Hearing 8-3-2011

1       But because he's my brother, he's our friend, because

2   he's a nephew, a son, an uncle, we're going to stand by

3   him today.

4       We're not going forget everything good that he's done

5   in his life today.  We're not going to over look that,

6   judge, and we want the Court to know that's the way we

7   feel.

8       We believe him when he asks for help and recognizes

9   he's needs help.  Because he's our brother, judge, I

10  believe that he can be rehabilitated.  I believe that

11  there is the potential to return him back where he can

12  rejoin society, contribute again.

13      We all stand behind him and know he's got a debt to

14  pay, judge.  And while we don't want him to go away, we

15  know he will.  But the Court should know that we're going

16  to be here with him when he returns.

17      So the only thing I can ask for today, judge, is a

18  chance for Steve to redeem himself.  The hope that one day

19  he can return to his family, friends, begin to contribute

20  to society, try to make right what is so obviously wrong

21  about his conduct.

22      I'm asking the Court to consider a term of years with

23  sexual offender rehabilitation treatment rather than a

24  sentence of life, judge.

25      I thank you for your time.

Usa v Demink 10-20676

Sentence Hearing 8-3-2011

1        THE COURT:  Thank you, Mr. Dinan.  Mr. Mulcahy?

2        MR. MULCAHY:  Yes, Your Honor.

3        As a procedural matter to start, I would like the

4   Court to know that -- and I trust that the Court has

5   received all of the victim impact letters?

6        THE COURT:  I did.

7        MR. MULCAHY:  There is, as we noted in our

8   sentencing memorandum, there is one victim who's here

9   today.

10       My intent would be to call her when the appropriate

11  time is in my remarks, if that's okay with the Court or I

12  can call her now.

13       THE COURT:  I think it would be appropriate if you

14  want to call her up.  I'll be happy to hear from her.

15  I'll ask defendant and defense counsel to be seated.

16       MR. MULCAHY:  Would you like that to happen now?

17       THE COURT:  If you'd like to speak first, that's

18  fine or if you'd like to call the victim first; either

19  way you wish to proceed.

20       MR. MULCAHY:  Okay.  Thank you, Your Honor.  I'll

21  think I'll call her in the middle of my remarks.

22       There's really only three things.  We've filed a

23  sentencing memorandum, it is lengthy, comprehensive.  We

24  stand by it.  I won't repeat it for Your Honor nor will I

25  read word for word all the victim impact letters.  I know

Usa v Demink 10-20676

Sentence Hearing 8-3-2011

1   Your Honor has.

2       THE COURT:  I have.

3       MR. MULCAHY:  However, there are three things.

4   And the first and foremost are about the victims in

5   this case.

6       Because the victims are minors, these children, these

7   innocent children, we try as best as we can after-the-fact

8   to protect them, that's why we give them monikers such as

9   Minor Victim 1, Minor Victim 2.

10      My concern not from the Court just generally - just

11  in general is that MV1 through MV12 tends to take the

12  humanity out of who these children are.

13      THE COURT:  You needn't worry about that.

14      MR. MULCAHY:  Thank you, Your Honor.

15      So what I -- and I trust that what I would like to do

16  so I could adequately represent those 12 victims is just

17  for a moment talk about what is unique about each one.

18  Because each one, although they all fell under this case,

19  they all were sexually assaulted because of Mr. Demink's

20  actions, they are unique.

21      And, for example, Minor Victim Number 1 is the oldest

22  victim, he's 15 years old.  What makes him unique in

23  relation to the others is not just his age.  He was asked

24  to engage in the most widespread egregious of sexual

25  assaults, if one could rank those things.

Sentence Hearing 8-3-2011

 1      He was asked to participate in every capacity, in

 2  every imaginable definition of the term of elicit sexual

 3  conduct.

 4      When is was all said and done, his mother was

 5  arrested.

 6      This boy had to move across the country and I

 7  literally mean from one coast to the next and live with

 8  someone with whom he had a troubled relationship, his

 9  guardian now.

10      And so for his part Minor Victim Number 1 had his

11  life obviously shook up in a unique way.  His mother,

12  Rebecca Nail, has been sentenced to 30 years in prison in

13  federal prison.

14      THE COURT:  I read her letter.

15      MR. MULCAHY:  Thank you, Your Honor.

16      And the next victim in this case, Victims Number 2

17  and 3 are brother and sister out of Idaho.

18      Your Honor probably remembers Victim Number 2, this

19  brave five year old little boy.

20      THE COURT:  The one who went to the grandmother in

21  Idaho?

22      MR. MULCAHY:  I'll note Minor Victims 2 and 3 are

23  the youngest of all of Mr. Demink's victims.

24      This boy's bravery led to the final person, perhaps

25  ironically, to put a stop to Mr. Demink.  His disclosure

Sentence Hearing 8-3-2011

1   led to this investigation and led to Mr. Demink's arrest.

2        And but for that boy's bravery, he'd still be -- Mr.

3   Demink would still be sexually assaulting children by

4   using and manipulating their mothers to this day.

5        He and his sister, as I indicated, they're the

6   youngest victims.  But I would note something important

7   about Minor Victim Number 2.  He's five years old, but he

8   understands even at five that he was sexually assaulted.

9        The reason he told his grandmother what he told his

10  grandmother is because his grandmother asked did you have

11  good time with your mother and he said no.  And he

12  explained why.

13       So even at this young age, he understands that he's a

14  victim of sexual assault and he will be forever.

15       Your Honor, as relates to Minor Victims 4 and 5, I

16  know Your Honor has received a letter, in my opinion

17  perhaps the most gut-wrenching letters from grandparents,

18  that talk about the small community that they live in.

19       They talk about how these children had to change

20  schools, the schools that their parents had gone to.

21  And --

22       THE COURT:  I don't want to name names.  Is this

23  the letter dated July 20, 2011?

24       MR. MULCAHY:  If I could have just one moment,

25  Your Honor?  Yes, Your Honor.  That is.  That is the

Sentence Hearing 8-3-2011

1   letter.

2       It is perhaps the lengthiest letter.  It speaks of a

3   number of different things.  I won't repeat them here.

4       But what stands out to me is this -- these children.

5   The ripple affect of their abuse, their assaults had on

6   this entire family.

7       And I suggest that although it's only articulated

8   perhaps in that letter, every one of these victims and

9   their families can tell a similar story of the ripple

10  affects of Mr. Demink's actions and how they crushed and

11  devastated that family.

12      For her part in this, unfortunately omitted from my

13  sentencing memorandum, I indicated that Candice Miller,

14  the mother of Minor Victims 4 and, 5 plead guilty to an

15  indictment where she faces 15 to 30 years in prison for

16  severity of child pornography counts.

17      She also is facing charges in the State of Florida,

18  life charges that carry life sentences.  I'm to assume if

19  she plead guilty on the one, her chances of avoiding that

20  significant sentence in the State of Florida are not good.

21      Your Honor, the Minor Victims 4 and 5, the one thing

22  perhaps not completely unique to them, one thing is clear

23  when we talk about Mr. Demink, we talk about what he's

24  done, it is, obviously for its own self gratification.  It

25  obviously is a completely selfish act.

Sentence Hearing 8-3-2011

1      But just to underscore that, these two children were
2  often woken up after they'd gone to bed at night, they
3  were kept home from school all so they could produce the
4  images that Mr. Demink so desperately wanted.
5      So while these might be the smallest of troubles or
6  inconveniences that these children have to face, it
7  underscores the fact that Mr. Demink was so insistent, so
8  demanding of their mother, that nothing mattered.
9      He said you'd keep those kids home from school if
10 they were sick.  I'm telling you they are sick.  They're
11 sick because of the way you raise them and I can fix them.
12     So it didn't matter the time of day, the particular
13 circumstances, it was what Mr. Demink wanted whenever he
14 wanted.
15     Your Honor, that brings us to Minor Victims 6 and 7.
16 This time, with the Court's permission, I would like to
17 ask their guardian to come forward, make an impact
18 statement to the Court.
19     THE COURT:  Do you wish to do this by question and
20 answer or simply read a statement?
21     MR. MULCAHY:  I believe she prefers to read a
22 statement, Your Honor.
23     THE COURT:  Could we have your name, please?
24     MS. HUGHES:  Yes.  My name is Trinity Hughes.
25 Forgive me.

Usa v Demink 10-20676

Sentence Hearing 8-3-2011

1      I am the aunt and now legal guardian of -- do I have

2  permission to use their names? My niece, Janelle, and my

3  nephew Brandon, two sweet children who fell victims to

4  Steven Demink at the hands of their own mother, my sister,

5  Autumn.

6      Mr. Demink, you are like a pebble tossed into a pond.

7  The affects of your self-serving, deceitful and immoral

8  actions will ripple through the lives of not only my

9  sister and her children, but the lives of their children

10  as well.

11      My sister who is somehow a person I can barely

12  recognize from her actions under your direction, as well

13  as her self-preserving behavior she's displayed in the

14  past ten months has already missed her son losing four

15  baby teeth, last year's Halloween costume, Christmas,

16  Easter, his 12th birthday.

17      Her daughter won four consecutive track races her

18  first school year, her first ever.  She had her 16th

19  birthday.  And she entered high school in two weeks.  All

20  of these small things are meant to be happy memories are

21  tainted by you.  The kids will always wonder would it be

22  different if Mom was here.

23      My parents will not speak to or even mention my

24  sister, their other daughter.  The holidays last year were

25  very difficult for every one.  I know they will never be

Sentence Hearing 8-3-2011

1   the same again for any of us.

2        There will be awards, accomplishments, proms,

3   graduation, first loves, marriages, her grandchildren that

4   Jen and Brandon will not be able to share with their

5   mother because she will most likely still be incarcerated

6   well into their late 20's or early 30's.

7        When I think of all the times I share good and bad

8   with my parents.  I'm 32.  I can't pretend that I can even

9   imagine what hell has been going through their heads since

10  the day you creeped into their lives.

11       I try to, but when I think of what must have been

12  pure horror, confusion and fear they felt in their own

13  home that day makes me sick.

14       How are they ever supposed to really feel safe again?

15  How are they ever to completely trust someone again; to

16  completely love without hesitation again.  They were just

17  children.

18       Children are supposed to feel safe at home, save with

19  their mother and enjoy the gifts of innocent naivete that

20  we're all given for at least 18 brief years.  You stole

21  all of that from them.

22       I personally endured three years of almost daily

23  abuse by the hands of a family friend.  The damage done in

24  those 1095 days is nothing compared to what one day of

25  abuse by one of my parents would have done to me.

Sentence Hearing 8-3-2011

1    I cannot fathom what you or those seven women were

2  thinking.  Ten months ago without notice I had to put my

3  own life on hold to put their lives back together.  And

4  I've been working diligently on that every day since.

5    I've not had the opportunity to have children of my

6  own.  I have been focusing on my career and higher

7  education goals.  Last fall in the State of Indiana,

8  Department of Child Services placed my niece and nephew

9  with me.

10    I was forced to withdraw from school at I.U.  You see

11  I'm no longer their aunt, I'm now their mother, father,

12  tutor, therapist and everyone in between.

13    I'm just now finishing my bachelor's degree in a

14  field that I never intended to major, at a school that I

15  never intended to have as my alma mater, and at the time I

16  already planned to be working towards my master's degree;

17  all because of you, a man that I don't even know.

18    I had plans for my life.  I had been building my life

19  the way that I wanted it and you stole that from me, too.

20    No amount of apology or retribution will ever give

21  back what you have taken from my the children, my sister,

22  mother, brother, father, all of my extended family,

23  Janelle and Brandon's father's family and their future

24  children who will not know grandma, only Aunt Trin.

25    So many lives will forever be altered and memories

Usa v Demink 10-20676

Sentence Hearing 8-3-2011

1    tainted by your selfish acts.

2        How dare you.  How dare you put your personal

3    satisfaction above the well being of so many others, not

4    just once but over and over and over again for what I can

5    only assume was day after day after day.

6        Steven Demink, you are facing 15 years to life today.

7    And although I feel strongly that no one is beyond

8    redemption, I have to hope you receive a life sentence

9    because that is what you have given at least seven

10   mothers, 12 children, and indirectly a vast unknown number

11   of other people myself included.

12       Although today is the only time you and I will ever

13   be in the same room together, your crimes will resonate

14   for all the years of my life.  That's all.

15       THE COURT:  Thank you.  Could I ask you -- ma'am?

16       MS. HUGHES:  I'm sorry.  I'm sorry.

17       THE COURT:  Have you been in contact with your

18   sister?

19       MS. HUGHES:  I have.  Your Honor, I'm actually the

20   only person outside of church and counselors that

21   acknowledges her.  I feel I have to set an example for

22   her children.  I don't want to sway their decision to

23   forgive or not for give in anyway.  They know that.

24   They've not spoken with her since her visits were

25   revoked in April.

Sentence Hearing 8-3-2011

1    From the time I received them in October, she had 11

2  one-hour supervised visits before they revoked her visits.

3  So she hasn't -- she has a no contact order prior to that.

4    I did just get legal custody a couple weeks ago.

5  They know if and when they choose to visit her or speak to

6  her, I will respect that.  It's totally up to them.  She

7  has a sentence or status hearing tomorrow morning,

8  actually.

9    THE COURT:  Has her case -- I believe she's in

10 Indiana?

11   MS. HUGHES:  Correct.

12   THE COURT:  Has her case there been resolved yet?

13   MS. HUGHES:  She has a status hearing tomorrow, I

14 believe, to discuss the plea.  If I have an opportunity

15 to speak on behalf the children and myself, I will.

16   She's very fortunate.  They're wonderful kids, huge

17 hearts.  And although they're angry and confused, their

18 lives have been completely turned upside down, I know that

19 they want to forgive and maybe they will.

20   Whether or not she's a part of their lives as adults

21 again that's going to be completely up to them.

22   THE COURT:  How are the kids doing?

23   MS. HUGHES:  They're doing very well, Your Honor.

24 I'm proud to say that anyone that was involved in the

25 case from the beginning now sees them today, they're

Sentence Hearing 8-3-2011

1    like two different children.

2        THE COURT:  Are they getting some therapy?

3        MS. HUGHES:  Yes, yes.  Every week, as well as

4    tutoring.

5        THE COURT:  Thank you.

6        Mr. Mulcahy.

7        MR. MULCAHY:  Yes, Your Honor.  And I, I will try

8    to be brief with the remainder of my remarks.

9        The, the remaining victims especially -- I know Your

10   Honor's read the letter from the Victims 8 and 9; those

11   are the two girls.  Their father wrote a letter on their

12   behalf.

13       THE COURT:  I got that letter.

14       MR. MULCAHY:  And he --

15       THE COURT:  I think it was the only father I

16   received a letter from.

17       MR. MULCAHY:  That's correct, Your Honor.

18       In many cases the fathers are involved in these

19   children's lives.

20       THE COURT:  I gathered that; sort of why the

21   mothers were on singleparentmeet.com.

22       MR. MULCAHY:  Yes, Your Honor.  But many don't

23   even have visitation or interest in visitation.

24       What I'd like to say about those two couldn't do

25   justice to their father's letter, but I would note that he

Usa v Demink 10-20676

Sentence Hearing 8-3-2011

1    focuses on a couple of things perhaps different then the

2    others, which are his girls leave him in almost a

3    Catch-22.

4        They don't want the door shut to go to sleep for fear

5    for of a camera.  They don't want the door open to go to

6    sleep for fear someone will come in.  Their lives have

7    been invaded once, they don't know if it will happen

8    again.  That father's anguish is palpable in that letter.

9        One of the thing he says is sleepovers are something

10   my girls are going to miss out on and talks about the

11   anguish he has of trying to decide who can you trust who

12   could you not trust.  After all, it was within the care of

13   their own mom mother that his children were victimized at

14   Mr. Demink's behest.

15       Minor Victims 10 and 11 lead us to a different

16   situation, Your Honor, out of Georgia.  Minor Victim

17   Number 10 was perhaps Mr. Demink's most difficult

18   challenge.

19       That teenage girl there challenged Mr. Demink through

20   her mother to say why is this.  Why do I need to have

21   these photographs taken of myself.

22       In fact, after the first round of photographs she

23   says I feel like I've been molested already, which Mr.

24   Demink takes over.

25       He brings her to the computer and says bring her,

Sentence Hearing 8-3-2011

1    Minor Victim 10 on the computer.

2         When he does, he learns very quickly what motivates

3    that young girl getting out of her current situation.  She

4    was not happy with the town or the residence that they

5    lived in.

6         And Mr. Demink seized on it immediately said all you

7    need to do are these things and I will take you away.  You

8    will come to Tampa, you will have a new life and he

9    promises a new and better life to convince her.

10        And if that weren't bad enough, her friend just

11   happened to be in the wrong place at the wrong time, Minor

12   Victim Number 11.

13        THE COURT:  I think I got a letter from her

14   mother.

15        MR. MULCAHY:  Yes, Your Honor.  And her mother

16   talks about the -- as I read her letter, although it's

17   just in words, it reads as written by someone who is

18   stunned, stunned that this could have happened.

19   Stunned that this man could have infiltrated her life.

20   She never heard of this man.  She was the only mother

21   who wasn't involved here.

22        What makes Minor Victim 11 perhaps, perhaps the most

23   sympathetic is when she says -- excuse me, when Minor

24   Victim 10 Charity Holloway says we cannot involve Minor

25   Victim 11, she's been sexually assaulted before, Mr.

Sentence Hearing 8-3-2011

1   Demink's seizes on that.  He seizes upon that and he grips

2   a hold of it very tightly and he says all the more reason

3   she needs to be part of this.  I can fix her.

4        It was some more threats and more convincing.  There

5   goes Minor Victim 11 sexually assaulted for a second time

6   in her life.

7        So it's not something where after-the-fact Mr. Demink

8   who couldn't possibly have known she was a prior victim.

9   He knew it and he used it.

10       The last -- I would note this did not make it in my

11  sentencing memorandum.  Charity Holloway faces both state

12  and federal charges.  Those are recent.  I don't believe

13  they've been resolved.

14       That brings us to Minor Victim Number 12. I indicated

15  number 11 might be the most sympathetic.

16       THE COURT:  Is this the young man who's autistic?

17       MR. MULCAHEY:  Yes, Your Honor.  I think he rivals

18  in sympathy, perhaps surpasses.

19       Victim Number 12.  Here's a boy who by the age of 12

20  cannot talk, cannot use the bathroom, he wears diapers

21  and, in fact, completely and wholly dependent on his

22  mother.

23       Again, another situation where Mr. Demink knows it,

24  learns it and uses it to sexually exploit that boy.

25       He says he will never ever experience a woman's

Sentence Hearing 8-3-2011

1    touch.  It is your job to make this happen.

2        He trades and pounces on her desire and I'm sure her

3    anxiety to be a good mother to a boy with special needs,

4    seizes on it and exploits it, uses it and for his own

5    sexual gratification.

6        THE COURT:  Apparently, he's now living with the

7    grandparents?

8        MR. MULCAHY:  Yes, Your Honor.

9        THE COURT:  I think I received a letter from the

10   grandfather.

11       MR. MULCAHY:  Yes, Your Honor, there was a letter

12   submitted by the grandfather.

13       And I -- I will say on that letter there was some

14   frustration to say the least that the grandparents' lives

15   have been turned upside down.

16       Ms. Hughes is a remarkable human being for what she's

17   been able to do, how she put her life aside and put her

18   life on hold for those children.

19       But these other parents and grandparents, excuse me,

20   grandparents and aunts, uncles, other guardians oftentimes

21   have been less than excited, very frustrated, very angry

22   that they've had to put their lives on hold.

23       This boy, Minor Victim 12's grandparents are 69 and

24   70 years of age.  They've earned their retirement, they've

25   raised their children.  Now they are thrust back into

Usa v Demink 10-20676

Sentence Hearing 8-3-2011

1   raising a boy and not just anybody, but actually two boys,

2   but a boy with special needs.  Their frustration's

3   palpable.

4       In their letter I note another point about more

5   things about Minor Victim 12.  He is -- he and his brother

6   now live with their grandparents.

7       You see, their father died two or three years ago.

8   We know this because Deborah Fisher, their mother, told

9   Mr. Demink that in a chat, in fact, in the very first chat

10  they ever met.

11      So when Mr. Demink not only seizes on the fact that

12  this boy's autistic and severely autistic, severely

13  limited, he seizes on the fact they don't have a Dad, not

14  don't have a Dad that's not interested, maybe a Dad got

15  problems with Mom, they have a father whose deceased.

16      Now look at these two children being raised by their

17  grandparents.  In the span of three years, their father

18  has died, their mother is going to jail and has no

19  contact.

20      To state that their lives have basically exploded in

21  front of the home would be an understatement.  He knew

22  every detail of it and didn't care.

23      What that means -- and the last thing Minor Victim

24  Number 12, he depended on his mother for everything.

25      And 69 an 70 aren't what they used to be.  69 and

Usa v Demink 10-20676

Sentence Hearing 8-3-2011

1   70 -- they still have many years ahead of them, but

2   there's a pretty good chance that this boy, Minor Victim

3   12, as he gets into his 20's and 30's, he's going have to

4   go to a home.

5       Those grandparents aren't going outlive him, he's

6   going to a home.  He wouldn't have gone to a home if it

7   wasn't for him.  The mother would take care of him since

8   the day he was born.

9       I had one more notion --

10      THE COURT:  Has Deborah Fisher been convicted and

11  sentenced?

12      MR. MULCAHY:  Her trial is in October.  She's not

13  been convicted.

14      THE COURT:  How much time is she facing?

15      MR. MULCAHY:  I don't have those.  I'm sorry,

16  Judge.  I'm not sure.  I know she's only -- she's only

17  charged in the state, she's not charged in both

18  jurisdictions.

19      You know, I had a note about what all of them share

20  in common, but Ms. Hughes said it better then I did or

21  that I could when it comes to what these parents have

22  missed out on.

23      And these mother are not victims by any stretch, but

24  they certainly were manipulated by this man.  They

25  certainly made their choices, but their choices came --

Usa v Demink 10-20676

Sentence Hearing 8-3-2011

1   were presented to them by him.

2       And so what these mothers will miss out on Ms. Hughes

3   said it best, all of the birthdays and track meets,

4   everything that comes with it.  But there's something else

5   here, too.

6       Every one of these children -- what's common among

7   all of them is they're going to have to have

8   conversations.  He has forced them to have conversations

9   that nobody should have.

10      When he goes to college, he's got a roommate.

11  Where's your Mom.  Is your Mom coming up?  When the boys

12  and girls grow up and they decide they found someone they

13  may want to date or marry, the conversation of where's

14  your mother?

15      When they have children, those children don't get to

16  have grandma, it's because of him.  They have that

17  commonality all of them.

18      They're going to have to have hard conversations,

19  embarrassing, humiliating conversations with the rest of

20  their lives to anybody they care about.

21      The second thing -- I told you I'd only talk about

22  three things, I'll be much shorter.  The second is just a

23  response to Mr. Demink's pleas for a lesser sentence then

24  life.

25      As for his own criminal history, that's true he has

Sentence Hearing 8-3-2011

1    no criminal convictions.  He's spent nine years collecting

2    child pornography.  This Court has seen a lot of child

3    pornography cases.

4         To watch and look for child pornography, it would

5    take a reasonable person -- it would hit them right in the

6    gut, it does every time, no matter how many times you see

7    them.

8         This man collected it for the better part of a

9    decade.  Every night when he put his head on the pillow,

10   every morning when he woke up from it, he knew he was

11   committing a crime.  To say that he has no criminal

12   history is unimpressive.

13        And I'd also note that that nine year span that comes

14   from his admissions, comes from the admissions of a man

15   who, by Dr. Miller's report, has a hard time or refuses to

16   talk about his sexual interest in children.

17        I suggest that a man with his history of manipulation

18   and a man who won't talk about the very reason he's here,

19   can't be trusted to limit it to nine years.

20        THE COURT:  Let me ask you to address this

21   question.

22        How should the Court evaluate and come into a

23   sentence Mr. Demink's possible potential for

24   rehabilitation as against the other sentencing factors?

25        MR. MULCAHY:  I do not think it helps him to get a

Sentence Hearing 8-3-2011

1   sentence less than life for this reason.

2       He has told Dr. Miller -- Dr. Miller's report, excuse

3   me, reads that Mr. Demink, besides being immature and self

4   indulgent, has had a resistance to or a flat out refusal

5   to address the sexual interest in children.  He clearly

6   has.

7       How can he rehabilitate himself if he can't be honest

8   with himself about his desires to watching and having

9   sexual assaults performed on children?

10      My suggestion is he's not a great candidate with

11  rehabilitation because the reason is he won't even admit

12  his own sexual interest in children, despite the decade of

13  collecting child pornography and horrific crimes we're

14  talking about here today.

15      I'd also note something else which should give this

16  Court pause. Even if he were more open and honest, Dr.

17  Miller's report on page 17 says and I quote:

18          Mr. Demink's highly unusual and unique

19          methods and the results achieved simply do

20          not fit readily within existing sex offender

21          classifications.

22      I could not agree more.  He is a man.  Unique in fact

23  outside this, outside this courtroom is a history of this

24  very room and some of the pillars and other things that

25  are in here.

Sentence Hearing 8-3-2011

1      This room has seen 115 years of folks coming in and

2  out.  I suggest to the Court it's never seen someone like

3  Mr. Demink, the ability that he had to manipulate people

4  and get what he wants.  So I don't think he's a good a

5  candidate for rehabilitation.

6      Which actually leads me to another issue that I think

7  he has offered for something which is that he never

8  himself laid a hand on a child.

9      Our response to that is, first, he directed like a

10 movie director, the chapter put some extras in there

11 exactly what he wanted to happen.  The sex acts he wanted,

12 the lighting he chose, the positions of those children.

13     And as I said earlier when he wanted it to happen.

14 Even had the wherewithal or the gall to comment on their

15 failure to smile during these sexual assaults.  Next time

16 smile, both of you.

17     So that he didn't lay a finger on these children, he

18 was the puppet master.  Those mothers were his puppets.

19 It's a distinction without a difference.

20     And I also suggest that makes him more dangerous.  If

21 The Internet provides the kind of access to children that

22 Mr. Demink used today, what's he going do when he's out of

23 custody?

24     What kind of technological advances will he be able

25 to exploit to get after kids then.  I can't think of them.

Sentence Hearing 8-3-2011

1          I'd also note that for the victims in this case, the

2    fact that Mr. Demink did not lay a hand on those children

3    would give them no solace.

4          It's probably worse for them, for these victims,

5    because when they could tell a friend, a colleague, that

6    they could tell a potential spouse, hey, I was sexually

7    assaulted by a pedophile, by a predator.

8          But they have to have a conversation that said I was

9    sexually assaulted by my mother because of a predator;

10   that's a way horrible conversation.

11         The last thing I'll say in response to some of the

12   issues that are set forth or some of the reasons set forth

13   for a lesser sentence by Mr. Demink or all those letters.

14         They're a lot of letters, they're a lot of people who

15   support Mr. Demink.  My quarrel is not with them, it's not

16   with his family and it's not with his friends.

17         What I suggest -- I mean with all due respect to

18   them, they seem all universally like good people.  But Mr.

19   Demink was able to manipulate other people, other mothers,

20   excuse me, other human beings, to violate the most sacred

21   bond that nature has ever made between a mother and a

22   child.  That bond -- there's nothing stronger.

23         He convinced without ever meeting them face to face,

24   to break it.  He manipulated them to destroy it.  And if

25   he could do that to them, all he'd have to do to

Sentence Hearing 8-3-2011

1    manipulate his friends and family is to convince them he's

2    not a monster.  That's easy.  I would say that's been

3    feeding his manipulation skills.

4        I don't doubt they all believe the letters they

5    wrote, but they're writing a letter about a different guy,

6    not writing about this guy.  It's a different guy.  They

7    don't know him.

8        The fact that Mr. Demink says he has some remorse and

9    feelings.  A lot of letters talk about this.  I believe he

10   has remorse for his victims.  He had opportunities to save

11   kids.

12       He had opportunities when the agents came knocking at

13   his door.  They didn't knock on his door and say we think

14   you might have child porn, so he might say I better not

15   confess to the worst conduct.  They showed him chat logs.

16       Here's a mother in Idaho.  She says you ordered her

17   to sexually assault her kids.  We believe it because we

18   have this chat log.  He admitted to that one.  He admitted

19   to two more.

20       But when bugged by the agents practically where they

21   said tell us about any more, because they knew, they knew

22   there were kids out there to be saved.  He didn't come

23   clean.

24       Real remorse doesn't come on a piece of paper.  Real

25   remorse comes with action, action that could save some

Sentence Hearing 8-3-2011

1   kids.  Taking the people who were sexually assaulted out

2   of their homes; we didn't get his help.

3       I would also note for his lack of remorse, they're

4   other identities Mr. Demink has had.  I talked very

5   briefly about this in our sentencing memorandum, other

6   identities.

7       What we've had is the principal identity that he

8   used, but there's others.  We know of others and he knows

9   what we know about others.

10      The last thing I want to say, judge -- this is my

11  final part, I promise.  I just want to wrap up by saying

12  we ask for a life sentence in this case, but we don't do

13  it lightly.  We don't ask for a life sentence, we are

14  parroting to you what the guidelines call for.

15      The guidelines do call for life; they do for reasons

16  separate and apart for why child pornography guideline

17  sentences get criticized.

18      They're so high in this case because of the number of

19  victims, the number of assaults, the ages of the victims

20  and the production -- the fact there was images produced

21  as opposed to merely traded.

22      We, ask for life and we think the guidelines are

23  right on this because no other term of years makes any

24  sense.

25      If Your Honor gave five years in jail to Mr. Demink

Sentence Hearing 8-3-2011

1  for every child that was sexually assaulted because of his

2  selfish conduct, that's 60 years.  Five years would be

3  insulting to them, in the government's opinion.

4      If Your Honor gave him the minimum mandatory, which

5  is 15 years for each child, it's 180 years.  It's life.

6      The reason the guidelines call for life is because

7  against this conduct, this unique conduct, the guidelines

8  call for life because life is the sentence here.  We ask

9  for it.  We don't do it lightly and we ask for it.

10      Thank you.

11      THE COURT:  Thank you.

12      Mr. Dinan, I don't know if you wish to present

13  anything else to the Court before I hear from Mr. Demink?

14      MR. DINAN:  I have nothing else for the Court,

15  judge, but my client would like to say something to the

16  Court.  May we approach?

17      THE COURT:  Please.

18      THE DEFENDANT:  Your Honor, I just want to say to

19  the victims and their families that I am sorry from the

20  bottom of my heart.  And I did not think of what

21  consequences that my actions were going to produce.

22      And I've had ten months to think about what I've done

23  and the consequences that have happened.  And I hope they

24  can find it in their heart one day to forgive me for what

25  I have done.

Sentence Hearing 8-3-2011

1    I need help and I want help.  I will take any

2  training, therapy, programs, any kind of education that

3  the government is willing to let me have.  And I'm going

4  to every day for the rest of my life try to atone and

5  rectify what I've done.

6    I would also like to thank my family and friends for

7  being here today and basically showing me support that I

8  don't really deserve.

9    And I do want to apologize to them, also, for what I

10  put them through.  Thank you.

11    THE COURT:  You said that you weren't thinking of

12  the impact on these children.  What were you thinking

13  of?

14    THE DEFENDANT:  I really don't know, Your Honor.

15    THE COURT:  Its --

16    THE DEFENDANT:  I was selfish.  I wasn't -- I

17  wasn't thinking of anyone but myself.

18    THE COURT:  As I read through the documents,

19  transcripts, the letters, it seems to me like this

20  became an obsession for you.

21    Over time, you seemed to have become obsessed by the

22  use of The Internet and the manipulation of other people

23  that you were able to achieve through The Internet.

24    Did you feel like you were so compulsively,

25  compulsively compelled to do this that you could just not

Usa v Demink 10-20676

Sentence Hearing 8-3-2011

1  stop?

2      THE DEFENDANT:  I wouldn't say I was compelled,

3  but I think I was using it to mask my own heart and

4  basically living a vicarious life that was amassing

5  deeper, deeper issues.

6      THE COURT:  Well, we all have sort of Walter Minny

7  dreams we'd like to live out.  But this went far, far

8  beyond that.

9      This appeared to me, after reading everything that

10  was presented to me by both your attorney, the letter from

11  your family and friends and the government, that this was

12  a became a very deep-seeded obsession.

13      I ask these questions because I think we're all

14  struggling to find an answer here on a number of different

15  levels.

16      One level is what could possibly have possessed you

17  to do something like this over such a long prolonged

18  period of time, on one level.

19      And a second level is the level that Mr. Mulcahy

20  addressed, the level that Dr. Miller attempted to address

21  as well.  What possibility is there that if I don't give

22  you a life sentence, you'll be able to rehabilitate

23  yourself and not fall prey to the same kind of

24  obsessive/compulsive behavior that brings you here today?

25      They're two sets of questions that, as I sort of

Usa v Demink 10-20676

Sentence Hearing 8-3-2011

1    struggle through his case, I think I need to try to

2    answer.  I don't know if you can answer them.  I don't

3    know if you've even thought about that.

4        THE DEFENDANT:  I think about it every day, Your

5    Honor.

6        THE COURT:  So the first question is what do you

7    think possessed you to do this in the first place?

8        THE DEFENDANT:  I think that I didn't like myself

9    so much that it basically took away all empathy I could

10   feel.  Why that particular path came about, I don't

11   know; I'm struggling with that.  But I just think I had

12   issues that were inside me that I didn't face and they

13   basically came out in a bad way.

14       I think, like I said, I just didn't bother to see the

15   affect of what I was doing, but I do see it now and it's

16   something I'll live with for the rest of my life and never

17   forget.  I also know it's never going to happen again.

18       THE COURT:  The government argues to me as you've

19   heard you're not a likely candidate for rehabilitation.

20   What can you tell me about that?

21       THE DEFENDANT:  I don't agree with that opinion.

22       THE COURT:  The government tells me that one of

23   the indicia of why you're not a candidate for

24   rehabilitation is that you, today, even to this day,

25   are not able to discuss your obsession with young

Usa v Demink 10-20676

Sentence Hearing 8-3-2011

1   children and child pornography.  That doesn't -- I do

2   think the government's correct about that.  If it's

3   true, it doesn't bode well for rehabilitation.

4        The first step in rehabilitation for any sort of

5   psychological impairment is to step away from denial and

6   to confront it.

7        MR. DINAN:  Your Honor, the only thing I'd want to

8   add is in Dr. Miller's report in the footnote --

9        THE COURT:  I saw that.

10       MR. DINAN:  -- it's, it's a matter of shame,

11  judge, as it is a matter of difficulty talking about

12  it.

13       THE COURT:  Mr. Dinan, that's Dr. Miller.  I want

14  to hear from your client.

15       MR. DINAN:  I understand, judge.

16       THE COURT:  You know, lawyers and doctors say a

17  lot of things after.

18       MR. DINAN:  I'm sorry, Your Honor.

19       THE COURT:  I've had a lot more time on the bench

20  then I'd even like to recognize.  I have to say that

21  they're some cases in which lawyers and doctors can

22  only have so much influence on a judge.

23       MR. DINAN:  I understand, judge.  Thank you.

24       THE COURT:  Mr. Demink, my question is that if you

25  really are not able to confront the root and core of

Sentence Hearing 8-3-2011

1   your illness, what prospect is there for

2   rehabilitation?

3       THE DEFENDANT:  I think we have made a lot of

4   steps towards that.  I think if we had more time to

5   speak, that report probably would have been a little

6   more in depth.

7       I think I have come to a lot of conclusions and

8   opened up to a lot of what my problems were.  And it's

9   nothing that I -- it's just the progression that it took.

10  We had four, five hours, we've talked about a lot of,

11  things.

12      And at this point, I don't want to hold back

13  anything.  I'm not holding back anything and further talks

14  will show that.

15      THE COURT:  My hunch is that your -- it's more

16  than a hunch.

17      I think it's after having had many of these cases

18  over the years, my educated estimation is that your

19  obsession with child, child pornography has gone on for a

20  long time, long before it manifested itself in the conduct

21  which now brings you here.  And I'm concerned that you're

22  not and have not been able to address that or to face it.

23      The only therapy that could possibly be effective on

24  a long term basis is the kind of therapy in which a person

25  fully and completely faces the full extent of their

Sentence Hearing 8-3-2011

1   problems.  Otherwise, it's just treating -- therapy's just

2   treating the symptoms.  So I'm concerned about your

3   prospects for rehabilitation, I really am.

4        Sentencing is a process.  It's a -- it's a difficult,

5   challenging process of trying -- the Court trying to weigh

6   all of the different considerations.

7        Because I think every judge is -- I know that I am

8   humanly aware of the implication of a sentence,

9   particularly a lengthy sentence and especially a life

10  sentence, not just for the person who's being sentenced,

11  the defendant in front of the court, but for the

12  defendant's families.

13       I get -- this is something you folks probably don't

14  see, but I get dozens and dozens of letters not only from

15  the defendants that I've sentenced, but from their family

16  members.

17       And you would have to be a pretty cold-hearted human

18  being not to recognize the devastation that a lengthy

19  sentence brings to the family of the defendant who's been

20  sentenced.

21       But in a case like this, that devastation probably

22  pails in comparison to the devastation that has been

23  reeked upon the victims and their families.

24       So as I try to weigh out the conflicting elements of

25  a sentence here, the question of whether the defendant may

Usa v Demink 10-20676

Sentence Hearing 8-3-2011

1    realistically be rehabilitated is an important one.

2        I have to say I appreciate Dr. Miller's report, I

3    found it helpful on a lot of different levels, but I

4    didn't find it very helpful on this issue of

5    rehabilitation.

6        If you wish to address any of those issues, Mr.

7    Demink, I want to give you a full opportunity to do it.

8        THE DEFENDANT:  Your Honor, I, I know you've heard

9    a lot today that paints me in a light that makes it

10   difficult for you to basically render your verdict,

11   (sic) but from the bottom of my heart I know -- and

12   this sounds slightly to almost say this.

13       I did not mean to hurt people.  I know I did and I

14   know I have issues I need to address, but I am not

15   unsalvageable.  I'm not someone that you can throw away

16   and not ever hear from again.

17       Despite all that's happened, I think I still have

18   value, I still think I can be a productive member of

19   society without the Court worrying about me reoffending.

20       I know you've seen a lot of things that point you in

21   the other direction, but I just know how I live my life.

22   I'll get to the why things happen eventually, I know that.

23   But I also I know that I lived my life not trying to hurt

24   people.

25       I know that the prosecution has said -- has painted

Usa v Demink 10-20676

Sentence Hearing 8-3-2011

 1  that.  But I do feel, I do feel sickened by what's going

 2  to happen to the victims, what's going to happen with the

 3  rest of their lives.  I know I had a big part of that.

 4      But I also know, given a chance, that will never

 5  happen again.  I know it from the bottom of my heart.  I

 6  just ask to you give my that chance.

 7      THE COURT:  I'd like to take just a minute to read

 8  a letter from your sister, okay?

 9                  (After a short delay,

10                  the proceedings continued)

11     THE COURT:  As I said to Mr. Demink, sentencing is

12  the hardest thing any judge does.  But even having said

13  that, some sentences are more difficult then others and

14  this is one of those sentences.

15      Because it calls into question some pretty basic

16  things; such as how well do we really ever know someone,

17  what are the balancing and competing factors in a person's

18  life when there is much that is good to recommend

19  somebody, but that that person has done indescribably

20  abhorrent, despicable and incredibly damaging acts that

21  have had a devastating affect upon other people.

22      As I said, there's some cases in which lawyers and

23  doctors just really can only help a court so much.

24      And at this point I want to pause and say that I

25  think that both counsel for the government and for Mr.

Sentence Hearing 8-3-2011

 1   Demink, have done an outstanding job in representing, in

 2   Mr. Dinan's case, his client and in Mr. Mulcahy's case,

 3   the victims.

 4       The sentencing memorandums were truly outstanding.  I

 5   read every word of both memorandum and every letter that

 6   was presented to me.

 7       But, unfortunately, this is one of those cases that

 8   the lawyers can only help so much; and in some ways, their

 9   excellent advocacy has not made my job easier but, rather,

10   more difficult as I try to balance all of the competing

11   factors that I have to balance in coming to a just and

12   appropriate sentence under the law.

13       There are so many tragedies that have spawned out

14   from Mr. Demink's virtually daily sessions on his computer

15   that it's hard to, it's hard to calculate the butcher's

16   toll.

17       Whether we start with the victims, the children.  And

18   I accept every word in the letters without absolving the

19   mothers who obviously have their own demons they'll have

20   to contend with, to the letters I've received from Mr.

21   Demink's parents.  I don't know if they're in the

22   courtroom.

23       MR. DINAN:  They are.

24       THE COURT:  I appreciated the letters that helped

25   me understand Mr. Demink, the letter from his sister

Usa v Demink 10-20676

Sentence Hearing 8-3-2011

1    that I've just read now, from his friends.

2        I've been reading these letters as I said for a very

3    long time from defendants and I think I can tell letters

4    that are the product of an orchestrated campaign by the

5    lawyer and the letters that are truly heart felt.  And I

6    think the letters that I received from Mr. Demink's family

7    and friends are truly heart felt.

8        As I read them, I just kept thinking how well do we

9    ever really know someone.  I can only imagine if one of my

10   siblings or a family member or a friend close friend were

11   charged with and sitting now where Mr. Demink is sitting,

12   what my reaction would be based upon the relationship that

13   I've had with them.

14       I would probably begun to question how well I really

15   -- how well I really did know that person.  So that's a

16   question that's almost insoluble here.

17       Another tragedy is Mr. Demink himself.  I realize

18   that he is the perpetrator here and I don't diminish in

19   the least the heinousness of his crimes and the impact on

20   the victims.  But his conduct is, obviously, the product

21   of a sick mind that simply controlled him to an extent

22   that he could not function rationally.

23       The nature and the tenure of his communications with

24   these mothers was not simply communication that was

25   suggesting or requesting.

Usa v Demink 10-20676

Sentence Hearing 8-3-2011

1    There was a very, very, very clear obsessive quality

2   to it that drove him to be so insistent and persistent and

3   to manipulate the very vulnerabilities of these women to

4   commit these hideous acts that they committed on their

5   children.  And I think probably even manipulated the

6   children themselves in a certain way in those instances in

7   which he was in direct contact with them.

8    The hardest question to answer is what are the

9   prospects for rehabilitation for Mr. Demink.  As I said, I

10  didn't -- I found, I found Dr. Miller's report to be

11  helpful on some levels, but ultimately elusive on the most

12  critical question for me, which is the prospects for and

13  potential for Mr. Demink to truly be rehabilitated.

14   I sometimes wish in sentencing in these kinds of

15  cases, I can do them progressively so that I would have a

16  chance to see how a defendant was progressing with

17  therapy.

18   But, unfortunately, sentencing has to be completely

19  prospective by its nature and can't be, can't be done on a

20  continuous basis.

21   The judge has to be able to make his or her best

22  decision with the information they have at the time and

23  hope that he or she made the best call possible.

24   When I look at this case, I think the overriding

25  consideration has to be the focus on the children that

Sentence Hearing 8-3-2011

1  were victims here.

2       Every one of these children were truly innocent

3  victims, every one of them.  And they were victims not

4  only at the time that Mr. Demink was perpetrating these

5  crimes, but the vast majority of them will no doubt be

6  victims for the rest of their lives.

7       They've not only had their childhood stolen from

8  them, but many of them will certainly have their adult

9  years stolen from them in very significant ways.

10      They will, no doubt, find it difficult to form

11  relationships, they will, no doubt have nightmares, they

12  will be deprived of parental guidance; given some of these

13  mothers that may not be a bad thing, but even, even these

14  mothers clearly cared about their children.

15      They were misguided, they were sick themselves.  But

16  some of these mothers were doing what they did because

17  they bought into Mr. Demink's manipulative urgings and

18  believed him, believed that what they were doing was in

19  some bizarre way good for the children.  And every one of

20  these children, every one of them will be deprived of a

21  parenteral relationship.

22      When I look at the impact and the devastation that

23  has been reeked through the use of The Internet by Mr.

24  Demink, it's almost inconceivable the breadth and the

25  length of the toll that his conduct will have.

Usa v Demink 10-20676

Sentence Hearing 8-3-2011

1      Who knows where these kids will go.  Who knows how

2  their lives will be impacted down the road.

3      Fortunately, some them are in good hands and

4  beginning the healing process, such as the two children

5  that our witness here spoke about.  But even those kids

6  will no doubt be impacted.  Others may be just cut a drift

7  with no mother provide for them, maybe no grandparents, no

8  siblings of the mother.  Some of these children may end up

9  as wards of the State.

10      And I think I would be remiss if I didn't, in

11  fashioning a sentence, keep a great deal of focus upon the

12  children.

13      That doesn't mean I've lost focus on you, Mr. Demink.

14  I've spent a lot of time thinking about you and reading

15  the letters from your friends and your family.

16      And as Mr. Dinan said, it's almost as if they're two

17  people there; the person who always stood up for the

18  underdog, the person who's kind and gentle, tried to help

19  his friends and neighbors and his family, the person who

20  is always there to help homeless families and neighbors,

21  elderly neighbors.

22      And maybe on some level you were trying to compensate

23  for the other person that you may be even at some level

24  couldn't control.

25      But when I add it all up, I'm very, very reticent to

Sentence Hearing 8-3-2011

1    be able to find that there's much prospect for the kind of

2    rehabilitation that would be truly effective to be able to

3    permit Mr. Demink to return to his family and the

4    community to live any sort of normal, productive life.

5        The prospect of a life sentence is a daunting

6    prospect for any judge, at least it should be.  It's not

7    one that any judge faces easily.

8        But as I look at the devastation that has been reeked

9    on so many lives, I'm afraid I have to conclude that this

10   is a case that justifies a life sentence, as difficult as

11   that is.

12       In the matter of the United States of America versus

13   Stephen Demink, criminal docket 10-20676, with respect to

14   the counts of conviction here, Counts Two, Three, Six,

15   Seven, Ten and Eleven, after considering the sentencing

16   guidelines and the factors contained in the sentencing

17   statute, as well as those factors which the Court has

18   discussed here and counsel have discussed here and Mr.

19   Demink discussed here on the record, it is the judgment of

20   this Court that the defendant be committed to the custody

21   of the Bureau of Prisons for a term of 360 months on

22   Counts Two, Six and Ten to run concurrent with each other.

23       And that with respect to Counts Three, Seven and

24   Eleven, it's the judgment of this Court that the defendant

25   be committed to the custody of the Bureau of Prisons to

Sentence Hearing 8-3-2011

1    serve a life term.

2         The life term on these counts will run concurrent

3    with each other as well as concurrent to the sentence

4    imposed as to Counts Two, Six and Ten.

5         I'm going to recommend very strongly to the Bureau of

6    Prisons that the defendant be committed to the Bureau of

7    Prisons Residential Sex Offender Treatment Program at

8    Devens and I hope that the Bureau of Prisons will follow

9    the Court's recommendation.  The Devens facility is known

10   as one of the very best within the federal correction

11   community in this area.

12        The law requires a special assessment of $100 for

13   each count of conviction.  They're six counts of

14   conviction, therefore, a special assessment of $600 is due

15   and payable immediately.

16        I have waived the imposition of a fine or costs of

17   incarceration, costs of supervision, due to the

18   defendant's lack of resources.

19        In the event that for some reason that Mr. Demink

20   does not serve a full term of life, he will be placed on a

21   term of supervised release for life as to all six counts

22   and on each of these counts, the supervised release term

23   will run concurrent.

24        Mr. Demink does not have a serious long-standing

25   problem of substance abuse, but he did have some substance

Sentence Hearing 8-3-2011

1   abuse issues, therefore, I have to impose the mandatory

2   drug testing condition.  Therefore, I do impose it.

3        Should he be on supervision, he will abide by all of

4   the standard conditions of supervised release which have

5   been adopted by this Court as well as the following

6   additional conditions mandated by law.

7        He will comply with the requirements of the Sex

8   Offender Registration Notification Act as directed by his

9   probation officer, the United States Bureau of Prisons or

10  any state offender registration agency in which he

11  resides, works or is a student or was convicted of any

12  other offense.

13       He will successfully complete any sex offender

14  diagnostic evaluations, treatment or counseling programs

15  and polygraph examinations as directed by his probation

16  officer.

17       Reports pertaining to sex offender assessments,

18  treatment and polygraph examinations shall all be provided

19  to his probation officer.

20       Based upon the defendant's ability to pay, he will

21  pay the costs of these evaluations, treatments and

22  counseling programs and polygraph examinations in an

23  amount to be determined by his probation officer.

24       He will not associate with minor children under the

25  age of 18 except in the presence of a responsible adult

Usa v Demink 10-20676

Sentence Hearing 8-3-2011

1   who is aware of the nature of his background and his

2   convictions here and who has been approved by his

3   probation officer.

4       He will not frequent places where children congregate

5   on a regular basis such as schools, playgrounds,

6   children's toy stores, video arcades, places of that

7   nature.

8       He must notify anyone that he would ultimately date

9   or marry who has minor children -- a minor child or

10  children under the age of 18 of his conviction and the

11  nature of it.

12      He will not purchase, sell, view or possess images in

13  any form of media or live venue that depict pornography,

14  sexually explicit conduct, child erotica or child nudity.

15      He will not patronize any place where this material

16  is available or such entertainment is available.

17      He will provide his probation officer with accurate

18  information about all computer systems that he has,

19  including all passwords and any Internet service providers

20  that he has the potential and reasonable access to, and

21  abide by all of the rules of the Probation Department's

22  computer monitoring programs.

23      He will only access a computer that has been approved

24  by his probation officer.

25

Sentence Hearing 8-3-2011

1        He will consent to his probation officer conducting

2     periodic unannounced examinations of all computer systems

3     which may include computer monitoring software at his

4     expense.

5        For the purpose of accounting for all computers'

6     hardware, software and accessories, he will submit his or

7     her person, his residence, computer, and/or his vehicle to

8     a search conducted by his probation officer at reasonable

9     times and places and reasonable manners.

10       He will inform any other residents that the premises

11    and his computer may be subject to search pursuant to this

12    condition.

13       And he will provide his probation officer with access

14    to any requested financial information, including billing

15    records, telephone records, cable records, Internet

16    records, satellite records and anything of the nature in

17    the future that we can't predict.

18       He will have employment preapproved by his probation

19    officer.  If his employment requires the regular use of a

20    computer, he will notify his employer of the nature of his

21    conviction and this notification must be confirmed by his

22    probation officer.

23       He will only access The Internet through one Internet

24    capable device.  All other Internet capable devices such

25    as cellular phones, gaming consoles shall not have the

Sentence Hearing 8-3-2011

1   Internet connected.

2       He is prohibited from access to any online computer

3   service at any location, including but not limited to

4   public libraries, Internet cafes, places of employment or

5   education without the permission of his probation officer.

6       He will not own on or possess a camera, photographic

7   device, and/or equipment, including video recording

8   equipment and including cell phones with photographic

9   capability without the prior approval of his probation

10  officer.

11      And, finally, he will not rent a P.O. box or storage

12  unit without the prior approval of his probation officer.

13      Mr. Demink, under the terms of your plea agreement

14  you agreed that if I were to accept your plea agreement

15  and sentence you within the guidelines that were

16  anticipated in the plea agreement, that you would waive or

17  give up any right that you would have to appeal either

18  your conviction or your sentence.

19      I've now accepted the plea agreement and have

20  sentenced you in accordance with the plea agreement and,

21  therefore, you do not have a right to appeal your

22  conviction or your sentence.

23      Is there anything else from counsel --

24      MR. MULCAHY:  Your Honor, excuse me.  Two matters.

25

Sentence Hearing 8-3-2011

1      THE COURT:  -- concerning either the sentence I've

2  imposed or anything else?

3      MR. MULCAHEY:  Your Honor, they're two matters.

4  First, there is the restitution issue to be paid.  I do

5  have --

6      THE COURT:  I was going to ask if you wanted a

7  separate hearing on that.  You didn't present anything

8  during your presentation.

9      MR. MULCAHY:  I would like an opportunity to brief

10  the Court on I believe a couple of outstanding issues

11  regarding restitution.  I've provided one example to

12  the Court, but I'd like to provide another to Mr. Dinan

13  at a later time.

14      If Your Honor would like a hearing, we could have one

15  at a later time.

16      THE COURT:  Well I think we should have a hearing

17  on it if it's necessary.

18      My question to you is what is the realistic prospect

19  now given the sentence?

20      MR. MULCAHY:  Not great.  I understand that.

21      I would like an opportunity to research that issue

22  and whether or not under Crime Victim's Rights Act I'm

23  advocating on their behalf correctly if I say it's

24  uncollectible.  If I think it's uncollectible, if I could

25  have an opportunity.

Sentence Hearing 8-3-2011

1          THE COURT:  The one thing -- I would want to put

2      all my cards on the table here.  I would not be

3      amenable to anybody other than Mr. Demink be

4      responsible for restitution, certainly not his family.

5          MR. MULCAHY:  I understand that, that wasn't my

6      suggestion if that's what the Court thought.

7          It was more of the issue of properly presenting to

8      the Court an order for restitution so that I adequately

9      explain to all the victims what they're entitled to under

10      the Crime Victim's Rights Act.  If that's an order that

11      can't happen because the defendant is unable to pay, so be

12      it.

13          I wanted to provide that to the Court perhaps in two

14      weeks, if that's agreeable.

15          THE COURT:  Mr. Dinan?

16          MR. DINAN:  Your Honor, it seems a moot point

17      given the life term the Court set forth.  But if the

18      government insists on pursuing this issue of

19      restitution, I would like an opportunity to respond to

20      that.

21          THE COURT:  Let's leave it that way, then.  Mr.

22      Mulcahy, you can present to the Court any material,

23      including any briefs for restitution that you wish and

24      Mr. Dinan will have an opportunity to respond.

25


                    Usa v Demink 10-20676

Sentence Hearing 8-3-2011

1      I generally don't like to enter pyric orders, so I
2   think should all be cognizant of that.
3         MR. MULCAHY:  I understand, Your Honor.
4         THE COURT:  I certainly want you to address that
5   issue.
6         MR. MULCAHY:  Absolutely.  I will.  I will talk to
7   Mr. Dinan beforehand before I file anything.  Because
8   that issue, what Your Honor just pointed out, may
9   resolve any dispute we have.
10      The second procedural issue is because Your Honor's
11  accepted the terms of the plea agreement, the government's
12  moving to dismiss the remaining counts of the Indictment
13  against this defendant.
14        THE COURT:  Provide me with a proposed order,
15  please.
16        MR. MULCAHY:  Yes, Your Honor.
17        THE COURT:  Anything else from the defense?
18        MR. DINAN:  No, Your Honor.
19        THE COURT:  Thank you all.
20
21           (This hearing then
22            concluded at 2:55 p.m.)
23
24
25

Usa v Demink 10-20676

1

2                    CERTIFICATE OF COURT REPORTER

3

4      I certify that the foregoing is a correct transcript

5      from reported proceedings in the above-entitled

6      matter.

7

8

9

10   s/Carol S. Sapala, FCRR, RMR        December 21, 2011

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                        Usa v Demink 10-20676